May it please the Court, I'm Yale Lewis here on behalf of Playmakers LLC. I know that our time is not unlimited, and the issues in the case I think raise the whole spectrum of trademark issues. I'd like to address, subject to the Court's questions, two issues. One is, I would like to address the three critical sleep-craft factors which, according to DreamWorks, would govern whether or not there's a case here to be tried to a jury. And then secondly, talk about the relationship between initial interest confusion and harm. Say that again. Between initial confusion and harm, the trial court here concluded that although there was a likelihood of initial confusion, that did not constitute harm. We think that's incorrect as a matter of law, as well as factually. Now, and I'd like to reserve five minutes for rebuttal. In this case, there are three, in our view, intensely disputed factual issues. They are also, according to DreamWorks, the three critical issues under the sleep-craft factors. And they are the similarity of the mark, the strength of the mark, and the proximity of services. I would like to read on each of these points, just briefly, the district court's opinion on that, and then address it.  Again, the court has acknowledged that the marks at issue in this case are exactly alike in the way they sound and in their meaning. This is still the court's language. However, it found, referring to itself, however, it found in the earlier order denying preliminary injunction that the notable visual similarity of the marks, was distinct enough that similarity would not weigh in favor of the plaintiffs in a likelihood of confusion case. That's the district court's order, which I am quoting. This is the most blatant of the court's assumption of the fact-finder's role in a motion for summary judgment. But don't we always have to look at that when we're evaluating? I mean, you know, we get this in cans of competing drink products. I mean, you always have to take an initial look. Oh, absolutely, Your Honor. That's the jury. If that's a function of the time or a fact. No, what you're saying is that if there's a question at all under that factor, then we can never enter summary judgment. No, Your Honor. I don't mean to be saying that. I'm saying that where the issue, taking strictly the issue of similarity, three parts. When the court determines, or as a legal matter, or when the fact-finder of fact determines similarity, according to the case law, three issues. Sight, sound, and meaning. That's what the finder of fact is supposed to look at and combine those three in order to determine whether in the fact-finder's view, the jury's view, there is similarity of the marks. My only point here is the court already found that on two of those, meaning and sound, they were identical. But then went on to say. But, Mr. Lewis, why can't a judge look at the fact that it's the same word, playmakers, and make a determination that no reasonable jury could possibly find that as to sight and sound, they're not the same? Why do we have to have a trial on those two? Well, Your Honor, the court found that they were identical. Right. Nobody questioned. How could a jury ever conclude otherwise? They're exactly the same letter. And we agree. And that's why we think it was error to say that there was no similarity based upon those factors. An identity of. Well, I don't think they said that there was no similarity in the names. I thought that the. The conclusion. The conclusion was that there was no likelihood of confusion. The conclusion was, on this point, you have to take them. They're a sleek craft. In sight, the court found that in sound and meaning, they were identical. Yes. But in sight, because of the ESPN logo, they were not identical. And I understand that. There is a jury function. There's a jury function. Can reasonable people disagree that if your client has playmakers, that's a word, and ESPN has playmakers with an ESPN logo, that they're similar? Can a jury find that? Of course they can. With logo over here and no logo over here? Beg your pardon, Your Honor. They're different marks. They're word marks at issue. They're word marks and logos at issue. The word marks are identical. Therefore, it is our view that a reasonable jury could find them parts were similar. But the word marks weren't used identically. The ESPN used its logo, didn't it? Well, Your Honor, there is a factual dispute, as I understand you know. In this circuit, there is a dispute and a reverse – there's not a dispute – and a reverse confusing case, which this is. Whether or not a house mark makes it more or less similar is a factual issue. That is to be resolved by the finder of fact. So the mere fact that ESPN is used in conjunction with playmakers in a reverse confusion case is an issue of fact for the finder of fact. It all goes to the jury. If I had a little company that made – that was engaged in manufacturing cleaning equipment or something like that, and I call it Scrubs, and then there's a TV show that's called Scrubs, I get to go to trial on whether there's a likelihood of confusion that my company is going to be – that there's going to be – that they're going to confuse it with my company. Is that right? The ultimate issue is likelihood of confusion. To get there, we all, whoever is involved in whatever part of the process, goes through eight independent factors under Sweetcraft in a reverse confusion case, under DreamWorks, to determine whether there is a likelihood of confusion. Likelihood of confusion is the end of the analysis, and therefore the jury goes through eight different steps to get there. And step one has three sub-components. Yes, Your Honor. Similarities of first one. Yeah. And all our point – I'm sorry. No, go ahead. Go ahead. And our point is only where the court has acknowledged that two of the three are identical, that must at least raise an issue of whether they are similar. Even though the court concluded that the third sub-component in the court's mind, they were dissimilar. Our point is that there is an issue of fact, of similarity. But we didn't have a problem with Slipcraft and Sleepcraft in that regard, did we? We didn't send it back for retrial when we remanded. Your Honor, that was a summary judgment case. It was sent back. Right. But not for trial on the question of – it was sent back for modification of the injunction, as I understood. Well, Your Honor, the – well, I beg your pardon, the injunction was a preliminary injunction. Right. An area of confusion here is the status, the stage at which a case is. In a preliminary injunction case, the trial court has a normant discretion. You only reverse for abuse of discretion. And in a – at the preliminary injunction stage, the trial court goes through, is supposed to go through, each of those eight factors to determine whether in the trial court's view there is a likelihood of success and that sort of thing. It is completely different on summary judgment. There the burden shifts totally, and it is the burden of, in this case, ESPN, to show that there is no issue of fact in any one of those eight. And why can't the court look to the use and existence of a housemark as a differentiating factor, as a matter of law, so that it concludes that there is not a material issue of disputed fact that a jury need resolve over that first sleep preference? Well, Your Honor, because the circuit has ruled that the – in a reverse confusion case, the impact of the housemark is a question of fact for the finder of fact, not for the court. It would be for the court on a preliminary injunction, but not on summary judgment. I really do think that you are arguing that you can never grant a summary judgment in a trademark case. I am not, Your Honor. I have gotten summary judgments in trademark cases. I'm not arguing that at all. What I am arguing is that walking through the eight factors, if there are issues of fact, it has to go to the jury for a determination of why. And I guess where I'm having a hard time is finding why there should be a legitimate material factual dispute where these marks employ housemarks in order to differentiate themselves. Your Honor, our position in this case is the housemark accentuates the problem in the proximity of services because ESPN, which builds itself as the leader, intergalactic leader in sports, that runs camps, restaurants, and a whole wide range of things. Are they also talent agents? Are they also sports agents? They are not sports agents, Your Honor. But the issue is where a company is so broad and then picks up, shows up, then picks up somebody else's name within the broad area in which they have expertise and dominance, whether that is significant. It is a matter of law of the court. The impact of a house name in this circuit is a matter of fact for a jury. So you think if General Motors made a Playmakers car, you'd have a trademark dispute against them? If General Motors, well, I would say that would be a different case, Your Honor, and that would be a better case for General Motors because General Motors is not normally in the sports business. It's the same way at Ford. So let's assume that they used a very similar blue and gray colors for Playmakers but used the house mark GM underneath. Would that be sufficient to permit a court to grant summary judgment as to the first sleep craft factor on similarity of the mark? Well, Your Honor, you get into another issue of proximity of service, which I haven't gotten to yet. No, if General Motors put out a car and called it Playmakers and used the same colors, we would not contend that that was an infringement. Because General Motors is not in the sports business, and automobiles don't have anything to do with football. Okay, but Playmakers is a sports term. Playmakers is a sports term, yes, and Playmakers is a sports agency, and ESPN bills itself as the dominant sports entity in the galaxy. So they happen to use the same sports term that your client uses. And so what is the question that the jury is ultimately, what is the tribal issue here as you see it for the jury? The tribal issue is likelihood of confusion, and there are eight separate issues that the jury will consider. And in this case, the court rules. What is the strongest one for you? I think all of the three. I think that the issue of whether they are similar I think is a jury issue. That's what juries do. They determine whether they compare the words, the way they look, their meaning, and the way they sound. That is a jury issue. That is a preeminent jury issue in trademark law, whether the marks are similar. That's what juries do. They look at things and decide whether or not they're similar. That is a preeminent jury issue. The second one. Why couldn't you make the same argument with regard to every one of the sleep craft factors, that a jury has to determine strength of the mark, proximity of services, and that a court can never as a matter of law declare on summary judgment that there's no likelihood of confusion? Well, Your Honor, this is no different than any other summary judgment issue. There are facts. In the record here, there are at least six people who said they thought the marks were similar. Yes, although the court apparently had some problems with regard to who those six people were. It wasn't like you commissioned a market study and a polling firm interviewed a thousand people on the street and asked them the question. Your Honor, this case does not lend itself to polling, and I'll tell you why. There's a very easy reason. The identity of college athletes is protected, and if a sports agency tried to get the identity of a college athlete and polled them, the license would be revoked. Nobody can poll college football players about anything because the universities won't disclose the names. The issue is that the people who make decisions are the athletes themselves, and we have produced a testimony or the defendant took a deposition testimony of three athletes. I mean, that's the athletes. Athletes who were associated with Playmakers as agents, right? Yes, but there were still athletes who found the marks to be similar. Your Honor, they wouldn't have contacted us if they... But they still signed with you. I mean, doesn't that get to the district court's point, no harm, no foul? They might have been confused initially, but they asked, are you affiliated with ESPN? No, we're... And that will take me to the last point, which is initial interest confusion. Initial interest confusion is harm, and that is a well-established... No. ...constitutes harm under the Trademark Act. We cited, I think, at least three cases in our brief for that proposition. What the problem is, maybe this is the one that we've never been able to get across to anybody, is this. Playmakers adopted, when we adopted the mark, when Playmakers, the agency, adopted the mark Playmakers, it was used to connote a player. The term as it was used was a player, generally a quarterback, sometimes a point guard in basketball, who set up the play for the scorers. The mark was selected to identify an agency that would set up the deal for athletes. It was not being used then. The ESPN has produced a dictionary in which it was used. There were 10 dictionaries at the time. Only four of them even used the word Playmakers. Playmakers did not appear in a sports directory. So the name was selected seven years ago to connote an agency that would set up the contracts, the plays, for athletes. That was a fine name. It was not common. We briefed this. I don't have time to go through it now unless you'd like me to. We briefed it well. It was not a common name. Playmakers ESPN came along later, filed an application intent to use it as a trademark. Then, according to their testimony, did a trademark search, which discovered Playmakers' use of the mark Playmaker. Then the show came out. It was a disaster for public relations. It was so bad that both the NFL and the NFL, the National Football League Players Association, asked it to be taken off the air, and it was. It had a clearly tarnishing effect. Now, here is the problem when coming back to initial interest. Playmakers' concern is that it is competing. It is a small agency competing in an area where there are hundreds of agencies. What happens is one goes to colleges, one goes to camps, a variety of different places, and players and their parents and their coaches and their pastors and whoever advises them are presented with, let's say, a hundred names of agencies. The name Playmakers was selected to catapult, to draw attention out of a hundred names to Playmakers so that Playmakers would be one of the three or four firms that were shortlisted. And it worked for one of your six, right? And it worked. The girlfriend who jumped out at you. The problem is, and so if somebody likes Playmakers so much that they talk with Playmakers, then it can be dealt with. That's not the issue. The issue is all of the people who come back and say Playmakers and mark it off because of the bad rap that it has gotten. What's the evidence on that? How many people have said that they did not go to Playmakers because the ESPN show was wrong? Your Honor, you never know. See, that's the point. We don't know those. We had six clients, three existing clients, came to us and said, hey, have you guys hooked up with ESPN? We could tell them no because they called. The problem is the pastor who's advising. Can you say have you hooked up with ESPN with a smile, with anticipation of it? No, no, no. You know, I still don't see the answer to my scrub. So are you affiliated with, what is it, NBC or, you know? But it has nothing to do with whether or not this company is making dishwashers. Your Honor, that's easy. A show about doctors has nothing to do with Brillo pads or pads that you use to do a counter or wash. That's the difference. That's the proximity of services. And that issue goes to the proximity of services. A show about doctors doesn't have any, there's no proximity to a cleaning method, to something that you use for cleaning. And also they don't get presented as such. So the point is you have to go through eight of these issues one at a time. Going back to the initial interest, it's called initial interest confusion. And it is recognized to be a clear harm because in this case, the senior mark user has no opportunity to address the people who are initially confused, think there might be an association, and don't contact us. There would never be an issue when somebody contacts us. That is not the issue. The issue under initial interest confusion is where you never know. As the people go through, take a hundred names, make a short list of three or four names, Playmakers doesn't show up because it wouldn't have shown up in all of them anyhow. In the absence of any evidence that anybody was deterred from signing up with your agency, you're asking us to assume that because the critics panned the Playmakers series, that there must be somebody out there who didn't call you because of it. No, Your Honor. We're not asking you to assume. Again, I think that is an issue of fact. But you don't have any evidence that anybody said, I'm not going with an agency that uses that demonic name. Your Honor, we have evidence from two people who said, if there had been an association, they would not have. Counsel, you've more than used your time. Thank you. Your Honor, I have a great sense of deja vu here. I was before this Court in June of 2004, and the only difference between the record that was in front of the Ninth Circuit in that case and the record that's in front of the court today is actually there is no difference in the record. The only difference is the procedural posture. There is no evidence, as Your Honor is saying, of the likelihood of confusion. These cases are all about the evidence, regardless of the applicable standard in question. And if I could, your opinion in June of 2004 stated, just like the district court, we are persuaded that despite the marked similarities, and then you dropped the footnote and you talked about the differences in the visual presentation of the mark, just as Your Honor said, and the commonness of the term playmaker, and then you cited to the Oxford English Dictionary, which is in the record, and there are hundreds of uses of playmaker out there in a sports context, in a non-sports context, hundreds of uses. I should also note that in 2002, well before ESPN adopted playmakers, in a one-week period, there were over 300 media uses of the term playmaker. That's in the record. So playmaker was widely known way before ESPN got around to adopting it in a sports context. And further, the Ninth Circuit went on, the remoteness of the parties, lines of business. What case are you quoting from, sir? Injunction. I'm quoting from your decision, this decision of the Ninth Circuit. Obviously, Judge Ferguson noted it wasn't the same panel. I'm quoting from the decision of the Ninth Circuit on July 15th, 2004, from the exact record, virtually the same record that we have here. That was where we upheld the denial of a preliminary injunction. Yes, Your Honor. And if I could just finish the quote, because I don't know, there's not much more to say once you realize that you concluded that there was the record strongly suggested that the LLC's prospective clients are not likely to be confused. So a strong suggestion of no confusion on a preliminary injunction record. You have the same record now. There's really a few depositions or what have you, but it's the same essential allegations. It's not a consumer survey, as Your Honor has pointed out. There's no really other evidence to suggest that they're likely to be confused. So if there's not a strong suggestion on one record, how could they possibly meet the test that they're supposed to meet in this circuit under Sleekcraft and in any other case involving which is no rational trier of fact could find for the appellant, because there is just no evidence. You can't just have a mere possibility that there's some confusion. You can't have a weak case. It's got to be a case that actually Judge Preggerson wrote in the M-2 case not very long ago in this Court that it had to be a probable case. And that was a Sleekcraft analysis. You had to have a probable case for confusion to avoid summary judgment. We came through with our evidence. There's evidence in the record that there's no likelihood of confusion. I think most of it is pretty obvious. It's not even the kind of thing that requires sophisticated survey work or professors coming in and talking about the meaning of words and all the rest. Playmaker is a well-known designation in the sports industry for someone who's leading the show, gets the job done. And of course the marks are similar, but the reason they're similar has nothing to do with ESPN trying to trade on the equity of some, you know, sports agency. It has to do with the fact that they both wanted to draw upon the same designation and trade on it. And there's nothing wrong or illegal or confusing about that. I want to get to the point about confusion. Likelihood of confusion doesn't mean that two companies have the same name and so one person associates them. It's whether or not, the way you have to go, the way you have to dig much deeper than that. Any time you and I are on the street and we hear about a company that has the same name as some other company, of course we might think of the first company that we're aware of that has that name. But the question is whether or not there's that. It goes into whether or not there's formal, whether there's a perception of an official affiliation, a relationship between one company and another. And that was never the question with respect to any of the nine individuals whose depositions were taken. I don't even think you really need to deal with the substance of their testimony because they were all or almost all family or friends or neighbors or acquaintances of the appellant. None of them was actually a prospective athlete who contacted playmakers and asked a question about their relationship and was interested in them or not interested in them or made no decision because he thought that ESPN had something to do with this sports agency. So there really, there was, there's a high degree, there's other very clear reasons here why summary judgment should be affirmed. There's a very high degree of consumer care exercised. The only relevant universe you got to remember is the prospective athletes. It's not anybody. It's just a very narrow band of people who might be interested in the services. They exert a very high degree of care and they would never, I can't imagine that any athlete would superficially connect one TV show with a sports agency and then all of a sudden make a decision without, without. You agree it wasn't a very good TV show. Actually, I don't agree. It wasn't a very good TV show. You might be surprised and I'm not going to agree with your honor, but it was actually a highly acclaimed show. It was the content of the show that bothered people at the NFL who I've also done some work for. And they, they had a problem with it, but it wasn't because there's anything artistically wrong with the show or anything like that. And I should point out that there's no evidence that even the designation Playmakers now means something different than it used to. Latrell Sprewell, who choked a coach when he was, I think it was Pete Carlissimo, I think it was Seattle, when he was playing for Seattle, was, had a bottle head doll made by the Upper Deck Company with that, that had Playmakers on it. They were using their Playmakers brand and they put Latrell Sprewell on it. Now, he doesn't have much of a reputation, but he was a Playmaker. I mean, it all comes back to how... We're getting a little... It's about the sport. It's not about anything other than... We're getting a little far field. I think we understand you. Okay. And there's just one other thing. There's also, just in case there's an issue here, there's a First Amendment question as well, since we named the title of our show ESPN, ESPN named the title of its show Playmakers, and the title is integral to the work itself. Unless you have direct overt falsity or no relationship to the title whatsoever, the Fred and Ginger Rogers line of cases would also support the proposition that summary judgment should be granted. I think I'm done. Okay. Unless there are any questions. There don't appear to be any. How do you answer opposing counsel's initial argument that three factors, similarity of trademark, strength of trademark, and proximity of services, if any of those present issues of fact, there should be a... Well, there's a gestalt. I mean, first of all, it's not about you take a factor in isolation and you say... I mean, you have to do that first. That's the first step, and that's what Judge Peckman did, and that's what the Ninth Circuit did. You look at each factor and you say, well, it's way slightly in favor, slightly opposed, whatever. But then you have to synthesize the whole thing. It's the gestalt. Well, is this whole thing, could it possibly lead a rational, rational finder of fact to rule in favor of the plaintiff? And I think I could deal with any one of the subsets that Your Honor is talking about, and virtually all of them compellingly favor ESPN, to the point where if there's a narrow, close issue on one of them, that it wouldn't possibly suggest that that leads to a triable issue of fact for jury. You don't think that a person who's moving for summary judgment must exclude every factor and every subfactor? Oh, no. That's clearly not the law, not in this circuit or even in this Supreme Court, which is where the summary judgment jurisprudence, of course, comes from. I'm blanking on the name of the case, but it's a well-known case, Fortnote 7, you know, one. You don't have to prove that there's not even a possibility. You just have to prove that there's no substantial evidence. And I think clearly we have done that. Of the ultimate question, which is likelihood of confusion. That's right, Your Honor. Simply proving that the same sound and meaning occurs in both cases does not raise a triable issue of fact as to similarity. Absolutely not. And therefore, likelihood of confusion. Absolutely not, especially where the sound and the meaning come from sports. They basically said that the first time around. Yeah. They don't point to either side. They point to the world of sports. Okay. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. You have more than used your time. Thank you. I think we understand your position. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. That stands adjourned.
judges: Schroeder, Tallman, Bea